# STATE OF NORTH CAROLINA

HAYWOOD County

FILED

| File No. | |
|---|---|
| | 20 CVS 578 |

In The General Court Of Justice
☐ District ☒ Superior Court Division

Name And Address Of Plaintiff 1

MOLLY CORDELL
95 DEPOT STREET
WAYNESVILLE                    NC      28786

2020 JUN 24  PM 3: 44

HAYWOOD COUNTY, C.S.C.

BY _____

Name And Address Of Plaintiff 2

# GENERAL
# CIVIL ACTION COVER SHEET

☒ INITIAL FILING    ☐ SUBSEQUENT FILING

Rule 5(b) of the General Rules of Practice for the Superior and District Courts

## VERSUS

Name And Address Of Defendant 1
CHEROKEE COUNTY
C/O SEAN F. PERRIN
301 SOUTH COLLEGE STREET, SUITE 3500
CHARLOTTE                      NC      28202

Summons Submitted    ☒ Yes  ☐ No

Name And Address Of Defendant 2
SCOTT LINDSAY, in his individual capacity
C/O PATRICK FLANAGAN
2907 PROVIDENCE ROAD, #200
CHARLOTTE                      NC      28211

Summons Submitted    ☒ Yes  ☐ No

Name And Address Of Attorney Or Party, If Not Represented
(complete for initial appearance or change of address)

DAVID A. WIJEWICKRAMA
95 DEPOT STREET
WAYNESVILLE                    NC      28786

| Telephone No. | Cellular Telephone No. |
|---|---|
| 828-452-5801 | |

| NC Attorney Bar No. | Attorney Email Address |
|---|---|
| 30694` | |

☒ Initial Appearance in Case    ☐ Change of Address

| Name Of Firm | Fax No. |
|---|---|
| LAW OFFICE OF DAVID A. WIJEWICKRAMA | 828-454-1990 |

Counsel For
☒ All Plaintiffs  ☐ All Defendants  ☐ Only: (list party(ies) represented)

☒ Jury Demanded In Pleading   ☐ Complex Litigation   ☐ Stipulate to Arbitration

## TYPE OF PLEADING

(check all that apply)

☐ Amend (AMND)
☐ Amended Answer/Reply (AMND-Response)
☐ Amended Complaint (AMND)
☐ Assess Costs (COST)
☐ Answer/Reply (ANSW-Response) (see Note)
☐ Change Venue (CHVN)
☒ Complaint (COMP)
☐ Confession Of Judgment (CNFJ)
☐ Consent Order (CONS)
☐ Consolidate (CNSL)
☐ Contempt (CNTP)
☐ Continue (CNTN)
☐ Compel (CMPL)
☐ Counterclaim (CTCL) Assess Court Costs
☐ Crossclaim (list on back) (CRSS) Assess Court Costs
☐ Dismiss (DISM) Assess Court Costs
☐ Exempt/Waive Mediation (EXMD)
☐ Extend Statute Of Limitations, Rule 9 (ESOL)
☐ Extend Time For Complaint (EXCO)
☐ Failure To Join Necessary Party (FJNP)

☐ Failure To State A Claim (FASC)
☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
☐ Improper Venue/Division (IMVN)
☐ Including Attorney's Fees (ATTY)
☐ Intervene (INTR)
☐ Interplead (OTHR)
☐ Lack Of Jurisdiction (Person) (LJPN)
☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
☐ Modification Of Child Support In IV-D Actions (MSUP)
☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
☐ Petition To Sue As Indigent (OTHR)
☐ Rule 12 Motion In Lieu Of Answer (MDLA)
☐ Sanctions (SANC)
☐ Set Aside (OTHR)
☐ Show Cause (SHOW)
☐ Transfer (TRFR)
☐ Third Party Complaint (list Third Party Defendants on back) (TPCL)
☐ Vacate/Modify Judgment (VCMD)
☐ Withdraw As Counsel (WDCN)
☐ Other (specify and list each separately)

**NOTE:** *All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must include either a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.*

(Over)

AOC-CV-751, Rev. 3/19, © 2019 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

_____HAYWOOD_____ County

FILED

2020 JUN 24 PM 3:44

HAYWOOD COUNTY, C.S.C.

BY _____

| File No. |
| 20 CVS *578* |

In The General Court Of Justice
☐ District ☒ Superior Court Division

*Name Of Plaintiff*
MOLLY CORDELL

*Address*
95 DEPOT STREET

*City, State, Zip*
WAYNESVILLE           NC      28786

## CIVIL SUMMONS
☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

G.S. 1A-1, Rules 3 and 4

**VERSUS**

*Name Of Defendant(s)*

CHEROKEE COUNTY, et al.

*Date Original Summons Issued*

*Date(s) Subsequent Summons(es) Issued*

---

To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| CHEROKEE COUNTY<br>C/O SEAN F. PERRIN<br>301 SOUTH COLLEGE STREET, SUITE 3500<br>CHARLOTTE                    NC        28202 | |

---

⚠️ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out!
You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as
possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales.
¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible
acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos
documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1.  Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been
    served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2.  File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)* | *Date Issued* 6/24/2020 | *Time* 3:44 ☐ AM ☒ PM |
|---|---|---|
| DAVID A. WIJEWICKRAMA<br>95 DEPOT STREET<br>WAYNESVILLE                    NC        28786 | *Signature* M. Harrah | |
| | ☐ Deputy CSC  ☒ Assistant CSC  ☐ Clerk Of Superior Court | |

---

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated<br>above and returned not served. At the request of the plaintiff,<br>the time within which this Summons must be served is<br>extended sixty (60) days. | *Date Of Endorsement* | *Time* ☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

---

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or
less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if
so, what procedure is to be followed.*

(Over)

# STATE OF NORTH CAROLINA

_____ HAYWOOD _____ County

FILED

2020 JUN 24 PM 3:44

HAYWOOD COUNTY, C.S.C.

File No.

20 CVS 578

In The General Court Of Justice
☐ District ☒ Superior Court Division

*Name Of Plaintiff*
MOLLY CORDELL

*Address*
95 DEPOT STREET

*City, State, Zip*
WAYNESVILLE                NC        28786

## VERSUS

*Name Of Defendant(s)*

CHEROKEE COUNTY, et al.

## CIVIL SUMMONS
☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)**

G.S. 1A-1, Rules 3 and 4

*Date Original Summons Issued*

*Date(s) Subsequent Summons(es) Issued*

---

**To Each Of The Defendant(s) Named Below:**

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| SCOTT LINDSAY, in his official capacity | SCOTT LINDSAY, in his individual capacity |
| C/O SEAN F. PERRIN | C/O PATRICK FLANAGAN |
| 301 SOUTH COLLEGE STREET, SUITE 3500 | 2907 PROVIDENCE ROAD, #200 |
| CHARLOTTE                NC        28202 | CHARLOTTE                NC        28211 |

---

⚠ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out!
You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as
possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales.
¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible
acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos
documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been
   served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and
2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)* | *Date Issued* 6/24/2020 | *Time* 3:44 ☐ AM ☒ PM |
|---|---|---|
| DAVID A. WIJEWICKRAMA | *Signature* | |
| 95 DEPOT STREET | | |
| WAYNESVILLE                NC        28786 | ☐ Deputy CSC  ☒ Assistant CSC  ☐ Clerk Of Superior Court | |

---

| ☐ **ENDORSEMENT (ASSESS FEE)** | *Date Of Endorsement* | *Time* ☐ AM ☐ PM |
|---|---|---|
| This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Signature* | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

---

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or
less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if
so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

HAYWOOD County

FILED

2020 JUN 24  PM 3:44

HAYWOOD COUNTY, C.S.C.
BY _____

| | |
|---|---|
| *Name Of Plaintiff*<br>MOLLY CORDELL | |
| *Address*<br>95 DEPOT STREET | |
| *City, State, Zip*<br>WAYNESVILLE            NC      28786 | |

**VERSUS**

*Name Of Defendant(s)*

CHEROKEE COUNTY, et al.

*File No.*

20 CVS **578**

In The General Court Of Justice
☐ District  ☒ Superior Court Division

## CIVIL SUMMONS
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3 and 4

*Date Original Summons Issued*

*Date(s) Subsequent Summons(es) Issued*

---

## To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1* | *Name And Address Of Defendant 2* |
|---|---|
| CINDY PALMER, in her official capacity<br>C/O SEAN F. PERRIN<br>301 SOUTH COLLEGE STREET, SUITE 3500<br>CHARLOTTE                     NC      28202 | CINDY PALMER, in her individual capacity<br>C/O JOHN L. KUBIS, JR.<br>22 NORTH PACK SQUARE<br>ASHEVILLE                     NC      28801 |

---

⚠️ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles! Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)*<br><br>DAVID A. WIJEWICKRAMA<br>95 DEPOT STREET<br>WAYNESVILLE                     NC      28786 | *Date Issued* 6/24/2020 | *Time* 3:44  ☐ AM ☒ PM |
|---|---|---|
| | *Signature* My Hannah | |
| | ☐ Deputy CSC  ☒ Assistant CSC  ☐ Clerk Of Superior Court | |

---

| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement* | *Time*  ☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** *Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.*

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

STATE OF NORTH CAROLINA
COUNTY OF HAYWOOD



IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
FILE NO.: *20 CVS 578*

MOLLY CORDELL,
        Plaintiff

v.

CHEROKEE COUNTY,
SCOTT LINDSAY in both his individual
capacity and official capacity as DSS
attorney for Cherokee County, and
CINDY PALMER, in both her individual
capacity and official capacity as Director
of the Department of Social Services for
Cherokee County,

        Defendants.

       COMPLAINT
     (Jury Trial Demand)

---

NOW COME the Plaintiffs, by and through undersigned counsel, and allege the following Claims for Relief seeking recovery of damages and for injuries incurred as a proximate cause of the acts and omissions of Defendants arising from the conduct of the Defendants in their official and individual capacities, as described more particularly in this Complaint:

**INTRODUCTION**

1.  Plaintiff Molly Cordell is one victim of a scheme undertaken by Defendants and their agents leading to multiple events, transactions and occurrences, referenced and described in this Complaint, involving the unlawful taking of minor children by the Defendants. Defendants' conduct violated state and federal law, policy, and the constitutional rights of both parents and their children. Defendants illegally took minor children from the custody of their biological parents using a variety of unlawful documents titled Custody and Visitation Agreements (hereinafter "CVA"), Powers Of Attorney (hereinafter "POA"), Family Safety Agreements (FSA's), Safety Plans and other similarly substantive documents and agreements. These Alternative Removal Mechanisms were designed and used to avoid in Court

time, Judicial Oversight and reduce Cost to Cherokee County's DSS budget. Plaintiff Molly Cordell is one of many children removed from her home and injured by the Defendants' illegal and unconstitutional practices and policies of using CVAs and similar documents and processes.

## PARTIES AND JURISDICTION

2. Plaintiff Molly Cordell (hereafter Molly) is a citizen and resident of Cherokee County, North Carolina. Molly has a sister Haven Cordell.

3. Plaintiff is over the age of 18 and is legally able to bring this lawsuit in her own name.

4. Defendant Cherokee County (hereinafter "Cherokee County") is a political subdivision of the State of North Carolina, organized and governed by the laws of the State of North Carolina.

5. Defendants Lindsay is a citizen and resident of Cherokee County, North Carolina.

6. Defendant Palmer is a citizen and resident of Cherokee County, North Carolina.

7. The unlawful acts and/or omissions which are the subject of this action took place in Cherokee County, North Carolina.

8. Venue is proper in the Cherokee County, North Carolina pursuant to N.C. Gen. Stat. §§ 1-77 and 1-82.

9. The amount in controversy exceeds $25,000.00, and therefore the Superior Court is the proper division of the General Court of Justice for trial pursuant to N.C. Gen. Stat. § 7A-243.

10. Defendants are not entitled to absolute, prosecutorial, or governmental immunity because, *inter alia*, the actions complained of herein were not undertaken during the process of prosecuting any claim of abuse, neglect, or dependency in a proceeding before the District Court of Cherokee County, North Carolina.

11. Defendants have waived any governmental immunity that may arguably apply, pursuant to N.C. Gen. Stat. § 153A-435 by the purchase of insurance and/or participation in the North Carolina Association of County Commissioners Risk Management Pool, which provides coverage for the acts and omissions alleged against the Defendants herein. Defendant Cherokee County also has a cash

reserve that is also liable for any damages arising from the conduct set forth herein.

12. Each Claim for Relief against Defendants Lindsay and Palmer is brought against that Defendant in both his/her individual and official capacities, unless otherwise specified below.

13. Each Defendant, both those known and yet to be identified through discovery in this action, committed the acts complained of herein while acting in both their individual and official capacities.

## FACTS RELEVANT TO PLAINTIFF'S CLAIMS FOR RELIEF

14. Plaintiff adopts and incorporate by reference all allegations of this Complaint as though full set forth herein.

15. Defendant Scott Lindsay (hereinafter "Lindsay") has been at all relevant times, the attorney for Cherokee County DSS, an agent and employee of Cherokee County, and a Social Services employee of Cherokee County under the direct guidance and control of its Director.

16. Defendant Lindsay is a government actor as it relates to the allegations set forth herein.

17. Defendant Lindsay exercised personal and professional deliberation, made decisions and exercised personal and professional judgment as set forth herein.

18. Defendant Lindsay has been trained for more than 18 years in the rules, regulations, policies and procedures of the Department of Social Services as promulgated by the North Carolina Department of Health and Human Services ("NCDHHS") and the associated cases and laws of the state of North Carolina, the Constitution of the United States, and applicable federal laws, including corresponding federal cases and statutes.

   a. Defendant Lindsay, as an agent for Cherokee County and the Director of the Department of Social Services, is statutorily obligated to act in the best interest of each minor child and to ensure each child's health and safety at all times when acting in regard to Cherokee County (and its constituent Department of Social Services) and carrying out its duties.

b. Defendant Lindsay, as an agent for Cherokee County and the Director of the Department of Social Services, is obligated to ensure the legal rights of each and every parent are protected at all times when a minor child is being removed from a parent's care, custody and control, by Cherokee County (and its constituent Department of Social Services).

c. He is obligated to follow all the laws of the State of North Carolina at all times.

d. He owes a duty, as the DSS Attorney for Cherokee County and Social Services employee of Cherokee County, operating with the authority of and at the direction of the County Director of Social Services, to act in accordance and conformity with all applicable state and federal laws, policies, and procedures toward all adults and children who are provided social services by Cherokee County and its Social Services employees.

19. Defendant Lindsay has been continuously employed as both the County Attorney and DSS Attorney for Cherokee County simultaneously for many years.

20. Further, Defendant Lindsay has represented Cherokee County as DSS attorney and provided advice and guidance to the then-incumbent Directors of Social Services for Cherokee County and Cherokee County's Social Services employees regarding all social services-related investigations and practices during all times relevant to the allegations contained within this Complaint.

21. Defendant Cindy Palmer (hereinafter "Palmer") was, at relevant times (at the time of filing the original Complaint), the Director of Social Services for Cherokee County and has been an agent or employee of Cherokee County at all relevant times. Defendant Palmer is a health and community worker.

a. Defendant Palmer was the Director of Social Services for Cherokee County on an interim basis from November 30, 2009 until July 2010, and again from August 1, 2015 until March 23, 2016 and was the permanent Director of Social Services from March 23, 2016 until June 11, 2018.

b. Defendant Palmer has been, at all relevant times, an agent or employee of Cherokee County and a health and community worker.

    c. Defendant Palmer, at all relevant times, was trained in the applicable policies, procedures, and laws of the State of North Carolina as they pertain to her duties as Director of Social Services for Cherokee County, including Chapter 7B of the North Carolina General Statutes and how to perform the duties of a Social Worker.

    d. Defendant Palmer was not lawfully qualified to be the Director and a waiver was sought for her appointment by Cherokee County.

    e. Defendant Scott Lindsay served as DSS staff Attorney for this Director and used the CVAs for Molly Cordell during the time and tenure of this director and those before her.

22. Defendants Palmer, held, during the times aforementioned, a public office created by state statute whereby she exercised a position of power and discretion, as allowed by law as set forth in N.C. Gen. Stat. § 7B-100 *et. seq* and Chapter 108A of the North Carolina General Statutes.

23. Defendant Palmer was trained in the rules, regulations, policies and procedures of the Department of Social Services as promulgated by the NCDHHS and the associated laws of the state of North Carolina after assuming her responsibilities and duties.

24. Defendant Palmer as the Director of Social Services for Cherokee County, exercised personal and professional deliberation, made decisions and exercised personal and professional judgment as set forth herein.

25. Defendants Palmer, as Director of Social Services for Cherokee County, had both the authority and responsibility to set policies and practices for Cherokee County related to the County's obligation under state law to provide social services, including those complained of in this action.

26. As Cherokee County's Director of Social Services, Defendant Palmer had a duty of her office to, at all times, act in the best interest of each minor child over whom the County exercises its social services powers and to follow the law regarding placement of minors in the care of persons other than their biological parents including Molly Cordell.

27. Defendant Palmer was an official policymaker for Cherokee County as created and set forth by North Carolina law.

28. Defendant Palmer was a public officer as defined by applicable law, including the law of North Carolina.

29. At this time, Plaintiff is unaware of the identifies of other persons who are or have been social workers, supervisors, health and community workers and others who took part in, were involved in or, had knowledge of the process by which she was removed from her biological father's custody without lawful authority.

30. Each and every agent and employee of Cherokee County, including each and every past and present social worker, supervisor, attorney, and Director of Social Services, is obligated to act, at all times, in the best interest of each minor child over whom the County exercises its social services powers and to follow the law regarding placement of minors in the care of persons other than their biological parents.

31. Each and every agent and employee of Cherokee County, including each and every past and present social worker, supervisor, attorney, and Director of Social Services, is obligated to act, at all times, in the best interest of each minor child over whom the County exercises its social services powers and to follow the applicable law, policy and procedure as it relates to the removal/taking and placement of minor children in the care of persons other than their biological parents.

32. Each and every agent and employee of Cherokee County, including each and every past and present social worker, supervisor, attorney, and Director of Social Services, is obligated to act, at all times, in the best interest of each minor child over whom the County exercises its social services powers and to follow the applicable law, policy and procedure to provide services as required by law to the biological parents, guardians and persons to whom minor children were sent.

33. At all relevant times, Cherokee County had a Social Services Board, which had oversight authority over the County's Department of Social Services.

    a. At all relevant times, at least one County Commissioner served on the County Board of Social Services and was aware, or should have been aware, of the conduct of Defendant Lindsay.

    b. At times relevant to this Complaint, upon information and belief, Dan Eichenbaum was the Commissioner assigned.

    c. At all relevant times, the Cherokee County Commissioner serving on the Board of Social Services, as well as the Board itself, had a duty imposed by law to ensure that Social Services employees of the County complied with all applicable policies, procedures, and state and federal laws, including but not limited to, laws related to the taking of minor children from their parents and to review records on a periodic basis as set forth by N.C. Gen. Stat. § 108A *et. seq.*

    d. At all relevant times, the Cherokee County Commissioner serving on the Board of Social Services, as well as the Board itself, had actual knowledge, through an N.C. Dept. of Health and Human Services audit, that the Cherokee County Department of Social Services:

        i. Was grossly understaffed and underfunded;

        ii. Had an unacceptable social worker/open case ratio;

        iii. Was not being given adequate supervision by the director; and

        iv. Was otherwise failing to provide adequate social services in compliance with law and policy.

34. At all relevant times, Cherokee County, by and through its employees (including its Directors of Social Services) was aware, or should have been aware, of the Defendants' conduct, as describe throughout this Complaint. As a direct and proximate result of their deliberate indifference that shocks the conscience, Cherokee County effected the loss and deprivations referenced in this Complaint through its policy, pattern, practice, and custom of unlawfully taking minor children by use of illegal documents which acted as Alternative Removal

8

Mechanisms to avoid court involvement and judicial oversight, including Molly's CVA. Yet, Cherokee County did nothing to object or intervene.

35. The Defendants and the Social Services employees of Cherokee County, acting with the authority of and at the direction of the Defendants, at the times relevant, improperly billed either local, state or federal government funding sources while engaging in the CVA process with this Plaintiff.

36. Molly was born June 1, 2000, and, during the period of her minority, lived with her grandmother after her biological mother passed away.

37. Timothy Wayne Cordell is the biological father of Molly and Heaven, neither Molly or Heaven was living with their father after her mother's death.

38. Molly's relationship with her grandmother was volatile, and her grandmother was an unsuitable placement for Molly.

39. Social Services employees of Cherokee County, upon information and belief, opened an investigation into whether Molly and Heaven were an abused, neglected, or dependent child based in part upon the unsuitability of her grandmother.

40. This investigation resulted in Social Services employees of Cherokee County utilizing a CVA (executed by biological father, Timothy Wayne Cordell) to remove custody of Molly and Heaven from her grandmother and placing Molly with her brother, Timothy Isiah Cordell, who was over the age of 18 and living in Alabama.

41. Upon information and belief, a "Safety Resource Placement Memo of Agreement" was entered during 2/16/2016. Subsequently, it appears a Power of Attorney (POA) was initiated in February 2016. **EXHIBIT A(1)(2).**

42. Molly's brother attempted to enroll Molly in school in Alabama using the authority purportedly given by the CVA.

43. Alabama school officials refused to recognize the CVA as creating a legal guardianship or foster placement of Molly with her brother and refused to enroll Molly in school.

44. Molly's brother sought the assistance of Cherokee County DSS in enrolling Molly in school in Alabama, and Social Services employees of Cherokee County refused to provide assistance.

Case 1:20-cv-00199-MR-WCM   Document 1-1   Filed 07/27/20   Page 12 of 60

45. At no time relevant did Social Services employees of Cherokee County attempt to comply with the provisions of the UCCJEA and transfer Molly's home state to Alabama.

46. At no time relevant was any well-being or health check or other follow-up was provided by Social Services employees of Cherokee County.

47. Molly eventually left her temporary placement in Alabama and migrated back to Cherokee County, North Carolina.

48. Molly eventually returned to her grandmother, having no other viable options for care.

49. Molly and the grandmother had an explosive argument that resulted in law enforcement and DSS response.

50. Sometime during late summer of 2017, Social Services employees of Cherokee County again opened an investigation into whether Molly was an abused, neglected, or dependent child, and again utilized a CVA to purportedly transfer custody of MOLLY, again having the biological father, Timothy Wayne Cordell, execute the CVA.

51. Molly's placement after the second CVA was with a friend and the friend's parents, named Jackie Austin. Haven was place with a family in Cherokee County.

52. A signed copy of the second CVA involving Molly is filed herein. **EXHIBIT B.**

53. While living with Jackie Austin, Molly, who remained a minor, was not provided room and board, but rather was required to pay rent and contribute to the upkeep of the household.

54. Molly both worked and attended high school while at the second placement, paying approximately $400 per month in rent.

55. At no time relevant was Molly presented to a court as an abused, neglected, or dependent child.

56. At no time relevant was Molly provided any social services by employees of Cherokee County Department of Social Services or their appropriate benefit providers.

57. As a direct result of the use of the CVA by the Defendants, Molly was separated from her sister.

58. At no time relevant was any well-being check or other follow-up was provided by Social Services employees of Cherokee County.

59. As a proximate result of Defendants' conduct, Molly suffered sadness, pain and emotional distress as:

   a. Molly, as a minor was removed against her will and without due process of law from her home state to the State of Alabama;

   b. Molly, as a minor lost the services, care, protection, and assistance of her father and potential future services, care, protection, and assistance of her father;

   c. Molly, as a minor was unable to enroll and school and lost access to a free public education as guaranteed under the North Carolina Constitution;

   d. Molly undertook a harrowing journey from Alabama back to North Carolina without any legal or enforceable guardianship or foster placement;

   e. Molly was forced to return to an unsuitable home with her grandmother because she had no lawful and enforceable guardianship or foster placement;

   f. Molly was forced to sacrifice her adolescence and provide gainful employment, rent, and household upkeep to retain a place to live with the persons that Defendants unlawfully placed her; and

   g. Molly was separated from her sister who was the only family that knew and loved her and suffered severe emotional trauma, pain and suffering.

   h. Such other damages as may be proven at trial.

60. Because Molly was placed with her brother and Jackie Austin outside of the lawful process of a dispositional hearing in DSS Court and by means of the unlawful CVA, Cherokee County did not provide medical care and other services and benefits that it would have been required to provide had the lawful process of a court proceeding been undertaken. Therefore, Molly was directly harmed by Defendants' unlawful placement of her by losing medical care, education, and other beneficial services to which she would have been entitled.

61. Upon information and belief:

    a. The names of the documents and the specific mechanics of each used to accomplish the illegal taking of this child from her biological parent deprived her biological parent of his rights to substantive and procedural due process has varied through the years.

    b. At various times, these documents used for the illegal takings, were referred to as "Custody and Visitation Agreements," "CVAs," "Custody Agreements," "Safety Resource Placement Memo of Agreement," "SRPAs," Powers of Attorney "POAs", or such similar terms. Plaintiff uses the generic term "CVA" to encompass all such substantively similar documents or documents utilized to accomplish Defendants' unlawful objectives.

    c. Regardless of the title given to the document, the unlawful act was using the documents prepared by Social Services employees of the County to illegally take a child to whit a biological parent retained his constitutional rights to custody and to deprive that parent of his rights to substantive and procedural due process.

    d. CVAs other similar documents were often used as Alternative Removal Mechanism when Defendant Lindsay did not feel the case was "serious enough" for Court involvement.

    e. Defendant Lindsay would communicate about the draft CVAs with Cherokee County Social Services employees to input the particular factual information.

        i. The Social workers involved min this matter did so with the approval of Defendant Lindsay and/or their social worker supervisor (whose authority is directly derived from and can only be exercised with the consent of the County Social Services Director) who were following the policies and guidance of the Director of Social Services for Cherokee County, at the time.

      ii.  All knowledge of Defendant Lindsay, as well as the social workers and supervisors, are imputed to the Director of Social Services for Cherokee County at relevant times.

f. Upon information and belief, these CVAs, POAs, FSAs, Safety Plan or other similar documents were sent to and from Defendant Lindsay's Cherokee County-provided and private email addresses since 1999, including but not limited to Molly Cordell.

g. These CVAs, POAs, FSAs, Safety Plan or other similar documents have been used by Cherokee County Social Services employees and County Social Services directors to unlawfully take children from the lawful custody of a parent and deprive the parent of substantive and procedural due process since 1999.

h. Defendant Lindsay and/or social worker supervisors and/or Cherokee County Social Services Directors, including Palmer and those previous to her, advised these social workers that the use of CVAs was legal and permissible.

i. Cherokee County, by and through its Director of Social Services and Social Services employees, utilized unlawful CVAs, POAs, FSAs, Safety Plan or other similar documents as Alternative Removal Mechanisms, frequently.

j. Social Services employees of Cherokee County created and induced parents to enter into dozens of CVA's, POAs, FSAs, Safety Plans or other similar documents as Alternative Removal Mechanisms -- all of which were created, effected, and enforced by Social Services employees of Cherokee County or the county Director of Social Services, or Defendant Lindsay.

k. No CVAs, POAs, FSAs, Safety Plan or other similar documents were done without the direct or indirect approval, guidance and participation of Defendant Lindsay and/or the then-incumbent or actual Cherokee County Director of Social Services Cindy Palmer.

l. Defendant Palmer, the Cherokee County Director of Social Services, and persons who held the public office of Cherokee County Social Services Director prior to her (including Defendants Crawford and Davis) are and

were aware of the CVAs, POAs, FSAs, Safety Plans and similar documents as Alternative Removal Mechanisms and approved of them, both expressly and tacitly.

m. Use of the CVA's, POA's, FSAs, Safety Plans and substantively similar agreements to remove minor children from their parents without court involvement was an official policy of Cherokee County, implemented by Palmer and her predecessors as the county Social Services Director.

n. While the Director takes counsel and advice from her Attorney, supervisors and social workers, by statute and law, she is ultimately responsible and accountable for all of the policies and acts as it relates to each and every child Cherokee County DSS works with and removes from their biological parents.

o. Use of the CVA's, POA's, FSAs, Safety Plans and substantively similar agreements to remove minor children from their parents without court involvement was an accepted custom and practice of CCDSS, known to its policymakers and accepted and encouraged by the policymakers.

p. The practice of utilizing CVAs, POAs, FSAs, Safety Plan or other similar documents to remove minor children from their parents was so widespread and so obviously illegal that the failure of the Cherokee County Board of Commissioners or the Cherokee County Board of Social Services to exercise their statutory oversight authority and prevent or correct the unlawful actions of Cherokee County Social Services directors and employees constitutes deliberate indifference to the constitutional rights of the parents and children of Cherokee County.

q. On multiple occasions, the decision to proceed with a CVA or other similar document was made in consultation and agreement between the then-incumbent Direct of Social Services (including Defendants Palmer, Crawford, and Davis) and Social Services employees of Cherokee County.

r. On multiple occasions, the decision to proceed with a CVA or other similar document was made in consultation between Defendant Lindsay and

Social Services employees of Cherokee County during case review, case staffing, or other times.

s. These documents were used to achieve Cherokee County's and its Social Services director, employees, and Defendant Lindsay's goal of removing minor children from lawful custody when they lacked sufficient evidence or a legal basis to file a petition or seek non-secure custody of a minor child pursuant to N.C. Gen. Stat. § 7B-100 *et. seq.,*

t. CVAs, POAs, FSAs, Safety Plans or other similar documents were used to interfere with parental relationships in cases in which Cherokee County, its Social Services Director (including Palmer) and other Social Services employees and Defendant Lindsay knew such interference was not legally justified including but not limited to Molly.

    i. Moreover, CVAs and POAs and other similar documents were used to avoid judicial oversight into the activities of the Cherokee County Director of Social Services, other Social Services employees, and Defendant Lindsay.

    ii. Further, CVAs and POAS and other similar documents were utilized to avoid scrutiny by the Court and parents' counsel.

u. CVAs, POAs, FSAs, Safety Plan or other similar documents were used to avoid, and in fact did result in, Cherokee County not providing any follow-up care (including *inter alia* medical care) that Cherokee County is required to provide to children who are placed in an out-of-home placement, pursuant to N.C. Gen. Stat.§ 7B-100 *et seq.*

v. Upon information and belief, Palmer and Lindsay received salary increases during applicable times as set forth herein.

62. In a separate action seeking a Declaratory Judgment, Judge Sellers, entered a Declaratory Judgment, finding *inter alia,* that all CVAs and like documents including POAs and other similar documents to be void *ab initio.* A true and accurate copy of this Order is attached as **EXHIBIT C.**

63. Following a report from District Court Judge Monica Leslie to NCDHHS regarding the Cherokee County Department of Social Services' and Defendant Lindsay's actions when she discovered the Defendants' use of CVAs, the NCDHHS became aware of the practice of entering into CVAs and other such agreements as used in Molly's case.

64. DHHS advised in a December 20, 2017, letter to all county directors of social services that "facilitating such private custody agreements without the oversight of the Court falls outside of both law and policy." A true and accurate copy of this letter has been filed with the Court. **EXHIBIT D.**

## CLAIMS FOR RELIEF
## COUNT I: NEGLIGENCE
## (Against Lindsay in his individual and official capacities)

65. Plaintiff adopts and incorporate by reference all allegations of this Complaint as if fully set out herein.

66. Defendant Lindsay was employed as the DSS attorney for Cherokee County for a period in excess of 18 years.

   a. At all times relevant, Defendant Lindsay was trained in the law as an attorney, licensed to practice law in North Carolina, as authorized by the North Carolina State Bar. At no time was Lindsay the final policy maker for Cherokee County Department of Social Services.

   b. At no time relevant was Defendant Lindsay ever in an attorney-client relationship with Cordell or her biological father.

   c. At no time relevant, did Defendant Lindsay or any other named Defendant execute a binding retainer agreement involving legal services pursuant to the Rules of the North Carolina State Bar with Molly.

67. At all relevant times, Lindsay has improperly and without legal authority prepared CVAs, POAs, FSAs, Safety Plans and similar documents and obtained signatures from parents, either directly or indirectly, and made misrepresentations to accomplish the purpose of encouraging parents to sign the

CVAs, POAs and similar documents for the purpose of removing children from the lawful parent/plaintiffs' care, custody, and control.

68. Upon information and belief, the use of CVAs and POAs, FSAs, Safety Plans and other similar documents by Cherokee County was approved of by either official policy, unofficial custom, or constituted an official, endorsed or accepted practice of Cherokee County, based on Lindsay's involvement with preparing these documents and encouraging DSS employees to use them.

69. Defendant Lindsay stated to the District Court of Cherokee County in December 2017 that he had personal knowledge of at least 20 CVAs.

70. Upon information and belief, Defendant Lindsay received, reviewed, and approved dozens, if not hundreds, of CVAs, POAs, FSAs, Safety Plans or other similar documents during his tenure as DSS attorney for Cherokee County over the course of nearly 20 years. These documents were either drafted by other Social Services employees of Cherokee County or by Lindsay himself.

71. Upon information and belief, Defendant Lindsay reviewed and approved the CVA used in Molly Cordell's matter.

72. Upon information and belief, Defendant Lindsay improperly used his position to influence the Cherokee County Director of Social Services or her designees to NOT file petitions in regard to abused, neglected, and dependent children of Cherokee County based on personal relationships he had with family members of either the parents or children.

73. Upon information and belief, when Defendant Lindsay was questioned by social workers, he represented that the use of CVAs was lawful.

74. Defendant Lindsay's conduct, as set forth throughout this Complaint, was in violation of the Plaintiff's constitutional rights.

75. Pursuant to North Carolina law, Defendant Lindsay owed a duty to the Plaintiff in this matter and those similarly situated to render services and exercise the degree of care and or skill commonly applied and used by other DSS attorneys similarly trained with similar experience that a prudent, reputable attorney representing a Department of Social Services would have used when dealing with the plaintiff in similar circumstances as set forth herein.

76. Pursuant to North Carolina law, Defendant Lindsay failed to render services and exercise the degree of care and or skill commonly applied and used by other DSS attorneys similarly trained with similar experience that a prudent, reputable attorney representing a Department of Social Services would have used when dealing with the Plaintiff in similar circumstances as set forth herein.

77. Pursuant to North Carolina law, Defendant Lindsay failed to exercise appropriate professional judgment and engaged in misconduct which is otherwise unreasonable under the circumstances as set forth herein.

78. As a proximate result of Lindsay's negligence, Plaintiff has suffered damages.

### COUNT II: NEGLIGENCE

### (Against Palmer in her individual and official capacity)

79. Plaintiff adopts and incorporate by reference all allegations of this Complaint as if fully set out herein.

80. At all times relevant to the transactions and occurrences giving rise to the Complaint, the Social Services employees of Cherokee County received the training required by the State of North Carolina to be social workers at the Cherokee County Department of Social Services.

81. Upon information and belief, the use of CVAs and POAs, FSAs, Safety Plans and other similar documents by Cherokee County was approved of by either official policy, unofficial custom, or constituted an official, endorsed or accepted practice of Cherokee County.

82. North Carolina law imposes a duty on the named Defendants to act in accord with the constitutional rights of parents and children, including clearly stating that the provisions of Chapter 7B "shall be interpreted and construed so as to . . . provide procedures for the hearing of juvenile cases that assure fairness and equity and that *protect the constitutional rights of juveniles and parents* " N.C. Gen. Stat. § 7B-100(1) (emphasis added).

83. Upon information and belief, when Defendant Lindsay and Palmer were questioned by social workers, they represented that the use of CVAs was lawful.

84. Upon information and belief, Defendant Palmer received training from the North Carolina Department of Health and Human Services on the proper procedures for child removal pursuant to N.C. Gen. Stat. § 7B-100 *et. seq*.

85. Defendant Palmer owed a duty to the Plaintiff in this matter to render services and exercise the degree of care and or skill commonly applied and used by other County Directors of Social Services similarly trained with similar experience that a prudent Director of Social Services for a county would have used when dealing with the plaintiff in similar circumstances as set forth herein.

86. Defendant Palmer acted with deliberate indifference to such training, the law, the rights of the Plaintiff, and in other ways yet to be discovered through discovery.

87. Defendant Palmer acted with deliberate indifference to such training, the law to a level that shocks the conscience and violated Molly's constitutionally protected rights.

88. Upon information and belief, there is a written manual promulgated by NCDHHS setting forth written instructions for county Departments of Social Services on the proper and lawful methods to remove children from the custody of their biological parents pursuant to N.C. Gen. Stat. § 7B-100 *et seq.*

89. On multiple occasions, the Cherokee County DSS was audited by the NCDHHS, including reviewing files involving the removal of minor children from their biological parents.

    a. Upon information and belief, the CVA process was not discussed with or approved by NCDHHS or the State of North Carolina.

    b. Upon information and belief, the CVA documents were not shown to or disclosed to the state inspectors.

    c. Upon information and belief, the Defendants took affirmative steps to hide the CVAs and the process for obtaining CVAs from the state inspectors from NCDHHS.

    d. Alternatively, the Defendants negligently failed to inform NCDHHS officials about the CVAs and the process for obtaining CVAs.

90. At all times, the Defendants, not just limited to Palmer, knew or should have known that using CVAs to remove children from their biological parents was not an accepted practice and would not have been approved by NCDHHS.

91. Defendant Palmer was negligent in using the CVAs to deprive Plaintiff of a relationship with her biological father.

92. Defendant's conduct has proximately caused damages to Plaintiff.

## COUNT III: GROSS NEGLIGENCE

## (Against Lindsay and Palmer in their individual and official capacities)

93. Plaintiff adopts and incorporate by reference all allegations of this Complaint as if fully set out herein.

94. The Defendants owed a duty to the Plaintiffs in this matter and those similarly situated to render services and exercise the degree of care and or skill commonly applied and used by other County Directors of Social Services and their attorney, similarly trained with similar experience that a prudent Director and/or County DSS attorney would have used when dealing with the plaintiffs in similar circumstances as set forth herein.

95. Defendants, by their conduct as described in this Complaint, acted in reckless disregard of, or wanton indifference to, the rights of the Plaintiffs.

96. Traditionally, gross negligence has been defined as "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Toomer v. Garrett*, 155 N.C. App. 462, 482, 574 S.E.2d 76, 92 (2002) (quoting *Bullins v. Schmidt*, 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988)).

97. Defendants' gross and utter failure to take care to follow the constitutional and statutory mandates regarding the removal of children from their biological parents as described throughout this Complaint over a period of many years clearly demonstrates deliberate indifference to the rights of the Plaintiff and constitutes willful and wanton conduct.

98. As a result of this gross failure to exercise their duty of care, Defendants' use of the CVA to remove Cordell from her biological father's custody proximately caused the injuries described in this Complaint.

99. As a proximate cause of Defendants' conduct, Plaintiff has suffered damages.

## COUNT IV: NEGLIGENT HIRING AND RETENTION AND SUPERVISION
## (Against Cherokee County)

100. Plaintiff adopts and incorporate by reference all allegations of this Complaint as if fully set out herein.

101. Defendant Cherokee County owed a duty to its residents and citizens to ensure that its agents and employees acted pursuant to applicable constitutional and statutory mandates and all applicable state and federal laws.

102. Defendant Cherokee County owed a duty of care to its citizens to hire a competent and qualified Director of Social Services.

103. Defendant Cherokee County owed a duty of care to its citizens to hire a Director of Social Services who was well-versed and trained in all applicable federal and state policies and laws in the performance of her duties.

104. Defendant Cherokee County, either directly by its Board of Commissioners or its agents and employees bearing the authority and responsibility for doing so, had a duty to ensure that the Director of Social Services discharged the director's duties pursuant to applicable constitutional and statutory mandates.

105. At all times relevant, Director Palmer did not have the requisite qualifications to be the Director of Cherokee County Social Services, as set out by the North Carolina Office of State Human Resources.

106. At all times relevant, Director Palmer did not have the training or experience to perform the duties required as a Director of Social Services in North Carolina.

107. Defendant Cherokee County, despite being aware of Defendant Palmer's lack of qualifications, hired her for the position of Cherokee County Director of Social Services. To do so, Cherokee County sought and obtained a waiver from NCDHHS to hire Palmer, despite her lack of qualifications.

108. Defendant Cherokee County, either directly by its Board of Commissioners or its agents and employees bearing the authority and responsibility for doing so, failed to adequately oversee Defendant Palmer and other Directors of Social Services.

109. At all relevant times, Cherokee County had a Social Services Board, which had oversight authority over the County's Department of Social Services.

    a. At all relevant times, at least one County Commissioner served on the County Board of Social Services and was aware, or should have been aware, of the conduct of Defendant Lindsey.

    b. At all relevant times, the Cherokee County Commissioner serving on the Board of Social Services, as well as the Board itself, had a duty imposed by law to ensure that Social Services employees of the County complied with all applicable policies, procedures, and state and federal laws, including but not limited to, laws related to the taking of minor children from their parents.

    c. At all relevant times, the Cherokee County Commissioner serving on the Board of Social Services, as well as the Board itself, had actual knowledge, through an N.C. Dept. of Health and Human Services audit, that the Cherokee County Department of Social Services:

        i. Was grossly understaffed;

        ii. Had an unacceptable social worker/open case ratio;

        iii. Was not being given adequate supervision by the director; and

        iv. Was otherwise failing to provide adequate social services in compliance with law and policy.

110. Despite the presence of a County Commissioner serving on the Social Services Board and the awareness of the deficiencies in the services provided by the Department of Social Services, the County failed to exercise its oversight authority over Palmer in any way.

111. The use of unlawful CVAs and POAs, FSAs, Safety Plans and other similar documents has occurred for many years and over the tenures of multiple directors.

112. At no point during the time that the CVAs and POAs, FSAs, Safety Plans and other similar documents were being used to remove children from the custody of their biological parents did Defendant Cherokee County, either directly by its Board of Commissioners or its agents and employees bearing the authority and

responsibility for doing so, properly determine that Social Services employees of Cherokee County under the supervision, direction, and authority of the then-incumbent Director of Social Services (including Palmer) were following the law. Cherokee County and the persons responsibility for supervising the Social Services employees failed to discover that the then-incumbent directors of social services (including Palmer) were using the unlawful agreements, nor did they steps to correct the unlawful policies and practices being used by the Cherokee County DSS.

113. Cherokee County's failure to act and failure to oversee the then-incumbent Director of Social Services (including Palmer) and prevent or overturn the implementation of their unlawful and unconstitutional policies constitutes negligence in the hiring and retention and supervision of these personnel.

114. Cherokee County's failure to adequately oversee the then-incumbent Director of Social Services (including Palmer) and thereby prevent or overturn the unlawful and unconstitutional policies, or at a minimum attempt to remove Palmer from her office, constitutes deliberate indifference to the constitutional rights of Molly Cordell.

115. As a direct and proximate cause of Cherokee County's negligence, as set forth above, the Plaintiff has, in fact, suffered damages.

## COUNT V: GROSS NEGLIGENT HIRING AND RETENTION AND SUPERVISION
### (Against Cherokee County)

116. Plaintiff adopts and incorporate by reference all allegations of this Complaint as if fully set out herein.

117. Defendant Cherokee County owed a duty to its residents and citizens to ensure that its agents and employees acted pursuant to applicable constitutional and statutory mandates and all applicable state and federal laws.

118. In addition, or in the alternative, Cherokee County was grossly negligent in its hiring and retention and supervision of Palmer.

119. Traditionally, gross negligence has been defined as "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Toomer v. Garrett*, 155 N.C. App. 462, 482, 574 S.E.2d 76, 92 (2002) (quoting *Bullins v. Schmidt*, 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988)).

120. Defendant Cherokee County's gross and utter failure to make an inquiry into and respond appropriately to the unlawful conduct described throughout this Complaint over a period of many years shows deliberate indifference to the rights of the Plaintiff and constitutes willful and wanton conduct and shocks the conscience.

121. As a result of this gross failure to exercise its duty of care, Cherokee County's failure to discharge any DSS Director, including Palmer, who permitted the use of these CVAs, POAs, and substantially similar documents proximately caused the injuries described in this Complaint.

122. Defendant Cherokee County was grossly negligent in its failure to properly oversee its Director of Social Services from 1998 through 2017.

123. Further, Defendant Cherokee County was deliberately indifferent to the acts, or failures to act by the various Directors of Social Services.

124. As a proximate cause of Cherokee County's gross negligence, Plaintiff has suffered damages.

## COUNT VI: NEGLIGENT SUPERVISION

### (Against Palmer in her individual and official capacity)

125. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set out herein.

126. Chapter 7B of the General Statutes clearly states that it "shall be interpreted and construed so as to . . . provide procedures for the hearing of juvenile cases that assure fairness and equity and that *protect the constitutional rights of juveniles and parents* " N.C. Gen. Stat. § 7B-100(1) (emphasis added).

127. Defendant Palmer had a duty to ensure that she established social services policies for Cherokee County that protected the constitutional rights of juveniles and parents during her tenure as the Director of Social Services for Cherokee County.

128. Defendant had a duty to supervise the social workers, supervisors, attorney, and other Social Services employees of Cherokee County to ensure that their actions did not violate the constitutional rights of any juveniles and parents.

129. Defendant had a duty to establish protective services for juveniles alleged to be abused, neglected, or dependent. N.C. Gen. Stat. § 7B-300.

130. Defendant had a duty to make a prompt and thorough assessment of a complaint that a juvenile within Cherokee County is abused, neglected, or dependent. N.C. Gen. Stat. § 7B-302(a).

131. If, in the course of this assessment, Defendant determined that removal of the juvenile from the child's home is necessary for the protection of the juvenile, the Director is required to "sign a petition seeking to invoke the jurisdiction of the court for the juvenile's protection." N.C. Gen. Stat. § 302(c).

132. As a final policy maker and final supervisor over all Social Services employees of Cherokee County, Palmer had a duty to ensure that the Social Services employees of Cherokee County acted pursuant to applicable constitutional and statutory mandates.

133. Defendant failed to exercise her supervisory authority and thereby breached these duties.

134. Defendant failed to make any inquiry into and respond appropriately to the unlawful conduct described throughout this Complaint over a period of many years.

135. Defendant failed to supervise her employees to ensure that a petition seeking to invoke the jurisdiction of the juvenile court was filed when removal of Cordell from her biological father was deemed appropriate for Cordell's protection.

136. These failures on the part of Defendant to discharge her duties of care proximately caused the injuries described in this Complaint.

137. As a proximate cause of Defendant's conduct, Plaintiff has suffered damages.

## COUNT VII: GROSS NEGLIGENT SUPERVISION

## (Against Palmer in her individual and official capacities)

138. Plaintiff adopts and incorporate by reference all allegations of this Complaint as if fully set out herein.

139. Defendant Palmer had a duty to ensure that she established social services policies for Cherokee County that protected the constitutional rights of juveniles and parents during her tenure as Director of Social Services for Cherokee County.

140. Defendant had a duty to supervise the social workers, supervisors, attorney, and other Social Services employees of Cherokee County to ensure that their actions did not violate the constitutional rights of juveniles and parents.

141. Defendant had a duty to establish protective services for juveniles alleged to be abused, neglected, or dependent. N.C. Gen. Stat. § 7B-300.

142. Defendant had a duty to make a prompt and thorough assessment of a complaint that a juvenile within Cherokee County is abused, neglected, or dependent. N.C. Gen. Stat. § 7B-302(a).

143. In the alternative, Defendant's conduct was done in reckless disregard for the rights of the Plaintiff. Traditionally, gross negligence has been defined as "wanton conduct done with conscious or reckless disregard for the rights and safety of others." *Toomer v. Garrett*, 155 N.C. App. 462, 482, 574 S.E.2d 76, 92 (2002) (quoting *Bullins v. Schmidt*, 322 N.C. 580, 583, 369 S.E.2d 601, 603 (1988)).

144. Defendant was grossly negligent in her failure to properly oversee the Social Services employees of Cherokee County, who improperly removed Cordell from the custody of her biological father.

145. Defendant Palmer's conduct was a gross violation of the Plaintiff's constitutionally protected rights and shows deliberate indifference and constitutes willful and wanton conduct that shocks the conscience.

146. These gross failures on the part of Defendant to discharge her duties of care proximately caused the injuries to Plaintiff described in this Complaint.

147. As a proximate cause of Defendant's gross negligence, Plaintiff has suffered damages.

**COUNT VIII: DEPRIVATION OF RIGHTS 42 U.S.C. § 1983**

**(Against Palmer and Lindsay in their individual and official capacities)**

148. Plaintiff adopts and incorporate by reference all allegations of this Complaint as if fully set out herein.

149. Defendant Lindsay and Defendant Palmer are "persons" as that term is used in 42 U.S.C. § 1983.

150. At all relevant times, Defendants were acting under color of state law.

151. The CVAs and POAs, FSAs, Safety Plans and other similar documents were entered into in the course and scope of Cherokee County's child welfare, family services, and child protective services efforts.  However, the facilitation of these agreements falls outside the duties and responsibilities of Cherokee County, its Directors of Social Services, and Defendant Lindsay imposed by, inter alia, N.C. Gen. Stat. §§ 7B-108A, -108A(14), -108A(18) and other applicable statutes and laws.

152. At no time after the removal of Plaintiff did any of the Defendants, or Social Services employees of Cherokee County acting with the authority of and at the direction the Defendants, or health or community workers, review the placement as required by N.C. Gen. Stat. § 7B-100 *et. seq.*, or check on the health, safety, or welfare of the Plaintiff.

153. At all times relevant, Defendant Cherokee County's social services policies were established by Defendant Palmer, who acts under the authorization of North Carolina law.

154. At all relevant times, Defendant Palmer was further responsible for the oversight, supervision, policies, and procedures regarding implementation of social services by both Cherokee County policy and North Carolina law.

155. Pursuant to N.C. Gen. Stat. § 7B-100 *et. seq* and other relevant North Carolina statutes, including Chapters 108A and 153A, Defendant Palmer, was at all times relevant to this Complaint, the final policymaker with regard to all investigative and placement activities conducted by DSS staff, subordinates, attorney, and employees.

156. Defendant Palmer, at all times relevant to this Complaint, was acting under the color of state law in her individual and official capacity.

157. At the times relevant, all Social Services employees of Cherokee County were acting under color of state law and with the authorization of and direction of the county Director of Social Services, Scott Lindsay.

158. At the times relevant, all named Defendants were acting under color of state law in his/her individual and official capacities when engaged in the unlawful conduct described throughout this Complaint.

159. At the times relevant, the Defendant Palmer, supervisors, social workers, staff employees, Social Services employees of Cherokee County, health and community workers and Defendant Lindsay were acting within the scope of their employment.

160. Children, including Plaintiff, have a right under the Constitution of the United States, the Constitution of North Carolina, and the laws of the United States and North Carolina to live with their parent or parents free from involvement and interference of Cherokee County, absent proof by clear, cogent and convincing evidence of abuse, neglect, or dependency being produced in a court of law.

161. Parents and children including the named Plaintiff, have the right to live together as a family without government interference.

162. The only way a social worker, agent or the Director of a DSS may lawfully remove a child from a biological parent's custody under North Carolina law is by clear, cogent and convincing evidence, based on allegations of abuse, neglect or dependency.

163. Only a Court Order resulting from due deliberation, duly signed by a judge, and filed with the Court, can be used to interfere, interrupt or prevent the relationship between a parent and a child, including the Plaintiff in this action.

164. No judicial authorization ever occurred for this or any other CVA as it relates to the allegations as set forth herein, which removed Plaintiff from a lawful parent's custody.

165. At the times relevant, the Defendants, as set forth herein, lacked any legal right to remove Plaintiff from the custody of a lawful parent or guardian.

166. At the times relevant, there existed no legal authority for the Defendants to remove Plaintiff from the custody of a lawful parent or guardian.

167. Defendants never attempted to establish or work a lawful safety plan with regard to Plaintiff's placements prior to seeking execution of the CVA used to place Plaintiff first with her brother and later with inappropriate caretakers.

168. At no relevant time was Plaintiff provided counsel, the appointment of a guardian *ad litem*, or an attorney for a guardian *ad litem*, as required by North Carolina law.

169. The conduct on behalf of the Defendants toward Plaintiff shocks the conscience. At no time was Defendants' conduct supported in law or fact.

170. The right to parent one's child is enshrined in the Due Process Clause of the 14th Amendment to the Constitution of the United States and the Law of the Land Clause in Article I, Section 19 if the North Carolina Constitution.

171. The Defendants' conduct violated clearly established constitutional rights of any person who had a lawful right to the custody of Plaintiff, and these rights were clearly established at the time these violations occurred.

172. Defendants' actions deprived Plaintiff of her constitutional rights and violated her rights to both procedural and substantive due process.

173. The actions of the Cherokee County Social Services employees resulted an unlawful seizure of the Plaintiff, in violation of the Fourth Amendment to the Constitution of the United States.

174. The actions of the Cherokee County Social Services employees unlawfully deprived Plaintiff of her right to associate with any lawful parent or guardian in violation of the First Amendment to the Constitution of the United States.

175. The actions of the Cherokee County Social Services employees deprived Plaintiff of procedural due process by interfering with her right to freedom of association in violation of her respective rights under the First Amendment to the Constitution of the United States.

176. The actions of the Cherokee County Social Services employees deprived Plaintiff of substantive due process in that they shock the conscience of the Court.

   a. The use of the CVA was intended to (and did) allow Cherokee County and its Social Services employees to evade judicial review of their coercive and

unlawful action and to separate Plaintiff from her father without lawful authority.

    b. These actions by the Cherokee County Social Services employees violated Plaintiff's rights to substantive due process in violation of the Fourteenth Amendment of the Constitution of the United States.

177. Defendants each engaged in conduct in furtherance of the object of this conspiracy and induced others to engage in conduct in furtherance of those conspiracies.

178. Defendants engaged in such conduct in bad faith and with intentionally, recklessly, and with callous disregard for, and deliberate indifference to Plaintiff's rights.

179. As a direct and foreseeable consequence of this deprivation:

    a. Molly was removed against her will and without due process of law from her home state of North Carolina to the State of Alabama;

    b. Molly lost the services, care, protection, and assistance of her father and potential future services, care, protection, and assistance of her father;

    c. Molly lost the services, care, protection, and assistance of any lawfully appointed guardian and potential future services, care, protection, and assistance of a lawfully appointed guardian;

    d. After being removed from her father's custody and forced to relocate to Alabama. Molly was unable to enroll in school there and lost access to a free public education as guaranteed under the North Carolina Constitution;

    e. Molly undertook a harrowing journey from Alabama back to North Carolina without any legal or enforceable guardianship or foster placement;

    f. Molly was forced to return to an unsuitable home with her grandmother because she had no lawful and enforceable guardianship or foster placement;

    g. Molly was forced to sacrifice her adolescence and provide gainful employment, rent, and household upkeep to retain a place to live; and

    h. Such other damages as may be proven at trial.

180. Because Molly was placed with her brother and Jackie Austin outside of the lawful process of a dispositional hearing in DSS Court and by means of the unlawful CVA, Cherokee County did not provide medical care and other services and benefits that it would have been required to provide had the lawful process of a court proceeding been undertaken. Therefore, Molly was directly harmed by Defendants' unlawful placement of her by losing medical care, education, and other beneficial services to which he would have been entitled.

181. The CVA violated Plaintiff's rights guaranteed under the U.S. Constitution, including but not limited to:

    a. The agreement is not permitted by, did not comply with, and is contrary to the provisions of N.C. Gen. Stat. § 7B-100 *et. seq.,* of the North Carolina General Statutes (which is the means by which the constitutional rights of parents and juveniles are protected in North Carolina, *see, inter alia,* N.C. Gen. Stat. § 7B- 100(1)) because, *inter alia:*

        i. The agreement did not allow Plaintiff's father specified minimum visitation with Plaintiff, in violation of N.C. Gen. Stat. § 7B-905.1.

        ii. The agreement failed to follow the mandate of N.C. Gen. Stat. § 7B-507(a), which provides that any order placing or continuing the placement of a juvenile in the custody or placement responsibility of a county department of social services (whether it is an Order for non-secure custody, continued non-secure custody, a dispositional Order, or a review Order):

            1. Shall contain a finding the juvenile's removal or continuation in or return to the juvenile's home would be contrary to the juvenile's best interest;

            2. Shall contain findings as to whether the county Department of Social Services has made reasonable efforts to prevent or eliminate the need for placement of the juvenile, unless the court has previously determined that such efforts are not required and shall cease;

3. Shall contain findings as to whether a county Department of Social Services should continue to make reasonable efforts to prevent or eliminate the need for placement of the juvenile;

4. Shall specify that the juvenile's placement and care is the responsibility of the county Department of Social Services and that the agency is to provide or arrange for the foster care or other placement of the juvenile; and

5. May provide for services or other efforts aimed at returning the juvenile to a safe home or at achieving another permanent plan for the juvenile.

iii. The agreement violates N.C. Gen. Stat. § 7B-100 *et. seq.,* which does not authorize Cherokee County or its Social Services employees to enter into or facilitate private custody agreements, powers of attorneys, file private custody actions, or take any actions regarding custody of a minor child without judicial action.

1. These CVAs, POAs, FSAs, Safety Plan or other similar documents are more similar to a private parental custody agreement than a custody order entered under the authority of N.C. Gen. Stat. § 7B- 100 *et. seq.*

2. These CVAs, POAs, FSAs, Safety Plan or other similar documents, while similar to a private parental custody agreement, are not authorized under N.C. Gen. Stat § 50-13.1 *et seq.* or N.C. Gen. Stat § 50A-101 *et seq.*

3. These CVAs, POAs, FSAs, Safety Plan or other similar documents, though appearing to be similar to a private parental custody agreement, are prohibited by law.

4. Under N.C. Gen. Stat § 7B-905(b), a dispositional order under which a juvenile is removed from the custody of a parent, guardian, custodian, or caretaker shall direct that a

review hearing (as required by N.C Gen. Stat § 7B-906) be held with 90 days from the date of the dispositional hearing.

    iv. It was not executed under the supervision of the District Court of Cherokee County, North Carolina, which possesses original and exclusive jurisdiction over all juveniles alleged to be abused, neglected, dependent, undisciplined, or delinquent within the County. *See* N.C. Gen. Stat. § 7B- 200, 7B-1600, and 7B-1601.

    v. It was not executed under the supervision of the District Court of Cherokee County, North Carolina, which possesses original and exclusive jurisdiction over all child custody actions. *See* N.C. Gen. Stat. § 50A- 201(b) and N.C. Gen. Stat § Chapter 50-13.1 *et seq.,*

    vi. It was not reviewed by a court official or guardian *ad litem* for the minor child and was not filed in the minor child's juvenile action court file.

    vii. North Carolina District Court has the original and exclusive jurisdiction over all matters regarding all minor children within the state (excluding adoptions).

b. Molly Cordell's failed to follow the North Carolina Rules of Practice and Rules of Civil Procedure by *inter alia*:

    i. They were not signed by a judge or filed with the Cherokee County Clerk of Court's office.

    ii. Cherokee County DSS did not file any motion, notice on for hearing, or in any other way bring before or otherwise seek court approval or oversight in entering into the CVAs.

c. The execution of the Molly Cordell's CVA, was lacking in any legal safeguards for the rights of Adult Plaintiffs or Child Plaintiffs, as required by N.C. Gen. Stat. § 7B-100 *et. seq.,* and the Constitutions of the United States and the State of North Carolina.

d. Molly Cordell's CVA contained no provisions to revoke or otherwise modify the terms contained therein and contained no provision to allow judicial review or ratification at any time.

e. Molly Cordell's CVA, was used to deprive her father of the right to procedural due process and substantive due process.

f. Other ways that shall be ascertained through discovery and proven at trial.

182. The CVA was drafted and formatted in such a manner as to resemble a Court Order.

183. Defendant Palmer, and others who were in the position to establish and promulgate the policies and official practices of Cherokee County were aware of, approved, and directed the use of the CVA and substantively similar "agreements."

184. Defendant Lindsay drafted multiple CVAs, POAs, FSAs, Safety Plan or other similar documents involving many parents and children over the course of multiple years including Molly Cordell.

a. Molly's CVA, was prepared, propagated, and produced by CCDSS based upon Defendant Lindsay's advice, drafting, and/or counsel. The CVA was designed to be a bilateral "agreement" requiring the signatures of both the parents and the recipient adults.

b. Upon information and belief, Defendant Lindsay, Defendant Palmer, and/or Cherokee County are in possession of electronic copies of many, if not all, of the CVAs, POAs, FSAs, Safety Plan or other similar documents utilized by the Defendants.

i. Cherokee County, its Social Services employees, and health and community workers of Cherokee County are liable for their tortious actions, particularly in light of the deliberate indifference of Cherokee County, and its employees, its agents and other defendants yet to be determined through the discovery process.

ii. Cherokee County, its Directors of Social Services and other policy makers are liable for the direct activity and actions of the DSS and its officials and employees through their individual acts and actions, as well as the official policies and *de facto* policies.

iii. These unlawful "agreements" were crafted and utilized to unlawfully take minor children from the custody of their parents

with the knowledge and approval of the Cherokee County DSS director or Defendant Lindsay or both.

185. The Defendants combined, confederated, and agreed to act in conformity with their unlawful patterns, customs, and policies. Each member of the conspiracy shared the same conspiratorial objective to deprive the Plaintiff of her federally protected rights resulting in the harm and damages that the Plaintiff has incurred.

186. The unlawful conduct described throughout the Complaint demonstrates that:

   a. Defendants established as official policy or custom the use of CVAs to unlawfully remove Molly and coerce her parent to surrender custody of his children in violation of their rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States

   b. Defendants maintained a policy, custom, or pattern and practice of promoting, facilitating, and condoning the improper, illegal, and unconstitutional techniques by Cherokee County Social Services employees.

   c. Defendants demonstrated deliberate indifference to the unlawful, unconstitutional, and unconscionable actions of their delegated policymakers, and further failed to adequately train, supervise, or discipline Social Services employees in connection with protecting and ensuring the constitutional rights of the Plaintiff.

187. As a proximate cause of Defendants' conduct, Plaintiff has suffered damages.

## COUNT IX: DEPRIVATION OF RIGHTS 42 U.S.C. § 1983
### (Defendant Cherokee County - *Monnell v. Dep't of Social Services*, 436 U.S. 658)

188. Plaintiff adopts and incorporate by reference all allegations of this Complaint as if fully set out herein.

189. The Cherokee County Department of Social Services is a constituent department of Cherokee County. Cherokee County is governed by a Board of Commissioners, which has oversight over all county programs and departments.

190. The Director of Social Services for Cherokee County, pursuant to N.C. Gen. Stat. § 7B-100 *et. seq.,* and other relevant North Carolina statues including Chapters 108A

and 153A, is the final policymaker for all policies and procedures established to govern the operations and activities of the Cherokee County DSS.

191. Defendant Palmer was the Director of Social Services for Cherokee County on an interim basis from November 30, 2009 until July 2010, and again from August 1, 2015 until March 23, 2016. Palmer was the permanent Director of Social Services from March 23, 2016 until June 11, 2018.

192. The Defendants, as well as unnamed and other as yet unknown supervisors, directors, policymakers, and other responsible individuals are "persons," as defined pursuant to 42 U.S.C. §1983 and *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018 (1978), and its progeny.

193. Defendant Lindsay was, at the relevant times, simultaneously the attorney hired to represent Cherokee County in juvenile DSS court proceedings, as well as serving as the attorney for Cherokee County. Defendant Lindsay was also an advisor to Social Services employees of Cherokee County, including its directors. Defendant Lindsay was also a policy maker for Cherokee County.

194. Defendants Lindsay and Palmer established as official policy or custom the use of CVAs to coerce biological parents to surrender custody of their children in violation of their rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States.

195. The fundamental right to familial relations is constitutionally protected.

196. Cherokee County, by and through its final policymaker, maintained a policy, custom, or pattern and practice of promoting, facilitating, and condoning the improper, illegal, and unconstitutional techniques used by Cherokee County Social Services employees and Defendant Lindsay.

197. Cherokee County demonstrated deliberate indifference to the unlawful, unconstitutional, and unconscionable actions of their delegated policymakers. Cherokee County failed to adequately train, supervise, or discipline the directors of Social Services as set forth herein in connection with protecting and ensuring the constitutional rights of the biological parents and their children.

198. Because the County Commissioners of Cherokee County and/or the County Board of Social Services and/or the Cherokee County Director of Social Services and/or

Defendant Scott Lindsay were the final policymakers during the past 19 years, their acts or omissions during that time constituted the policy, custom, or pattern and practice of Cherokee County.

199. As the final policymaker for Cherokee County, the County Commissioners of Cherokee County and/or the respective Director of Social Services (Palmer, Davis and Crawford) and/or Defendant Lindsay created, promulgated, and maintained the following policies, customs, or practices that deprived the Plaintiff of her constitutionally protected rights by:

   a. Failing to properly train and supervise Cherokee County Social Services employees with regard to their duties not to (1) fabricate purportedly legal documents, (2) coerce signatures from biological parents whereby they gave up their right to parent, (3) separate a parent from a child, (4) remove a child from his/her family, (5) conceal the CVA process from NCDHSS auditors. (6) intentionally and recklessly failed to follow the procedures as set forth in N.C. Gen. Stat. § 7B- 100 *et. seq.*, (7) ignore the policies and guidelines as set forth by NCDHHS as it relates to safety plans, removal procedures, maintaining contact between parents and children, providing a reunification plan for parents and children and following up on placement of the minor children to ensure their safety, health and essential needs are being adequately met.

   b. Encouraging, promoting and condoning Cherokee County Social Services employees to (1) fabricate purportedly legal documents, (2) coerce signatures from biological parents whereby they gave up their right to parent, (3) separate a parent from a child, (4) remove a child from his/her family, (5) conceal the CVA, POA, Family Safety Agreement, Safety Plan and similar processes from NCDHSS auditors. (6) intentionally and recklessly failed to follow the procedures as set forth in N.C. Gen. Stat. § 7B-100 *et. seq.*, (7) ignore the policies and guidelines as set forth by NCDHHS as it relates to safety plans, removal procedures, maintaining contact between parents and children, providing a reunification plan for parents and children and following up on placement of the minor children

to ensure their safety, health and essential needs are being adequately met; (8) fostering a climate of impunity for engaging in such unconstitutional conduct.

c. Creating, promulgating, and maintain a policy, custom, or practice of failing to follow the law as set forth in N.C. Gen. Stat. § 7B-100 *et. seq.,* the policies, procedures and guidelines as set forth by NCDHHS and other behaviors, conduct or practices to be learned through discovery and proved at trial.

200. The wrongful acts and omissions that deprived the Plaintiff's father of custody of Plaintiff and his right to parent occurred pursuant to Cherokee County's policies, customs, patterns, practices and conduct.

201. The policies, practices, customs and patterns of conduct of Cherokee County were the direct and proximate cause of the violation of Plaintiff's constitutional rights, as described throughout this Complaint, and also the proximate cause of the damages to Plaintiff described throughout this Complaint.

202. As a proximate cause of Defendants' conduct, Plaintiff has suffered damages.

## COUNT X: RESPONDEAT SUPERIOR
### (State law claims only)

203. Plaintiff adopts and incorporate by reference all allegations of this Complaint as if fully set out herein.

204. Liability for the tortious conduct and constitutional violations by the Defendants in their individual and professional capacity are imputed to Cherokee County, a governmental subdivision of the state of North Carolina, by operation of the doctrine of respondeat superior.

205. The conduct of Defendants Palmer, Lindsay, and all Cherokee County Social Services employees, acting within their authority and at their direction, in their individual and official capacities, was undertaken within the course and scope of their employment with Cherokee County and in the furtherance of Cherokee County and its Department of Social Services.

206. The Defendants owed a statutory duty to Plaintiff to follow state law, act consistently with state policies, and not act in ways so as to infringe on the rights and privileges of parents and minor children, including Plaintiff, under the Constitutions of the United States and the State of North Carolina.

207. Defendants' use of the unlawful CVA interrupted, interfered with, and destroyed the parental relationship and bond of between Plaintiff and her father, and caused irreparable harm, injuries, emotional distress, mental anguish and other damages yet to be determined to Plaintiff.

208. As a proximate cause of Defendants' conduct, Plaintiff has suffered damages.

## COUNT XI: CIVIL OBSTRUCTION OF JUSTICE

## (Against Defendants Cherokee County, Palmer and Lindsay)

209. Plaintiff adopts and incorporate by reference all allegations of this Complaint as if fully set out herein.

210. Defendants intentionally, willfully, and maliciously engaged in an unlawful pattern of conduct by coercing parents into signing CVAs or substantively similar agreements.

211. Defendants further used the CVAs or substantively similar agreements to avoid judicial supervision and oversight of their unlawful activities and to deny parents their rights to access to justice and to access open courts.

212. Defendants obstructed the administration of public and legal justice by means of their unlawful actions as described throughout this Complaint.

213. Plaintiff was harmed by the unlawful actions taken by the Defendants in their attempt to obstruct justice as set forth here and elsewhere in the Complaint.

214. As a proximate cause of Defendants' conduct, Plaintiff has suffered damages.

215. Upon information and belief the documentation relating to Molly Cordell's CVA was destroyed by CCDSS.

## COUNT XII: PUNITIVE DAMAGES

### (Against Lindsay and Palmer in their individual capacities)

216. Plaintiff adopts and incorporate by reference all allegations of this Complaint as if fully set out herein.

217. Defendants, by their actions as set forth in this Complaint, have acted intentionally, willfully, wantonly, and maliciously in causing the injuries complained of.

218. Defendants' intentional, willful, wanton, and malicious behavior has caused injuries to Plaintiff as set forth in this Complaint, including:

    a.  Violating her rights under the Constitutions of the United States and North Carolina;

    b.  Obstructing justice and denying them access to due process of law;

    c.  Damage to the safety, well-being, mental health, and familial cohesiveness of the Plaintiff;

    d.  As a direct and foreseeable consequence of Defendants' conduct, Plaintiff suffered injuries, including but not limited to, pain and suffering, mental anguish, emotional trauma and distress, and other injuries as described throughout this Complaint.

219. The Defendants' intentional, willful, wanton, malicious and oppressive conduct is the proximate cause of injuries sustained by the Plaintiff. As a result, Plaintiff is entitled to punitive damages.

## COUNT XIII: ATTORNEY'S FEES

### (Against All Defendants)

220. Plaintiff adopts and incorporate by reference all allegations of this Complaint as if fully set out herein.

221. Plaintiff is entitled to an award of attorney's fees pursuant to 42 U.S.C. § 1988(b) and other applicable federal and state statutes related to the allegations as set forth herein.

222. In addition to compensatory and punitive damages, Plaintiff seeks to recover her attorneys' fees from Defendants.

**WHEREFORE** the Plaintiff by and thru her Counsel prays the Court and demand Judgment:

1. For an award to Plaintiff for injuries and damages, including but not limited to, pain and suffering, compensatory, consequential, punitive and other such damages, as well as interest thereon, in an amount in excess of $25,000.00 to be proven at trial;

2. For pre-judgment and post-judgment interest as allowed by law.

3. For an award of attorney's fees and costs as allowable by all applicable laws;

4. For a trial by jury;

5. For an acknowledgement of wrongdoing by the named Defendants and an apology for the same; and

6. For such other and further relief as the Court may deem just and proper.

This the 24th day of June, 2020.

DAVID A. WIJEWICKRAMA
Attorney for Plaintiff
95 Depot Street
Waynesville, NC 28786
P: 828.452.5801
F: 828.454.1990

## Safety Resource Placement Memo of Agreement

I agree to be a safety resource placement for: _Molly Cordell_ as a part of a Child Protective Services safety plan developed on: _2|10|16_, I understand that this is a voluntary arrangement made by the parent(s) _Timothy Cordell_ and that the **parents retain legal custody of the child(ren).** They retain all their rights and parental authority and can give or refuse permission and make decisions about the child(ren)'s confidentiality, education, medical treatment, etc.

1. I understand that the child(ren) are not in foster care; DSS does not have custody of the child(ren).
2. I understand this arrangement is intended to be temporary according to the time frame outlined in the safety plan.
3. I understand there is **no guaranteed financial assistance** (e.g., foster care board rate, clothing allowance, etc.) provided to me for the care of the child(ren) regardless of the length of time the child(ren) are in my home.
   - I understand that if I am a relative to the above named child(ren) I may apply for child-only Work First/TANF benefits in the county in which I reside. That department will determine whether I qualify for the benefits.
   - I understand that I will need to apply for Medicaid on behalf of the child(ren) in the county in which I reside.
   - I understand that I may apply for Food Assistance in the county in which I reside and that eligibility for that assistance is determined according to the income of the entire household.
   - I understand that I am responsible for arranging for day care as needed, and may apply for day care subsidy in the county in which I reside as indicated.
   - I understand that I may contact the child support unit at DSS in the county in which I reside and seek child support or work out another financial support arrangement directly with the parent.
4. DSS approved of this safety resource placement based upon an initial kinship assessment. I understand that if this arrangement continues beyond 30 days, it will be necessary for DSS to complete a more thorough assessment. I agree to cooperate by providing needed information in any assessment or home study process.
   - I understand that criminal record checks of all adults in the household will be conducted and that other background checks, including drug screens, may be completed.
   - **I understand that if any concerns that have the potential of placing the child(ren) at risk of harm are identified in these assessments or home studies, there is a possibility the child(ren) will be moved from my home.**
   - I understand that if DSS takes court action and it is necessary for the child(ren) to enter DSS custody, it may be necessary for the foster care licensing process to be completed for the child(ren) to remain in my home for an extended period.
5. Because DSS does not hold custody, the agency is not responsible for nor does it have the authority to either limit or arrange for contact between the child(ren) and the parents. It is my responsibility to arrange for contact between the parent and the child(ren) at a time and place that is mutually convenient for the parent and myself. I understand that any limits on parental access to the child(ren) are voluntary on the part of the parent unless a court order has otherwise established limitations.

EXHIBIT

tabbies'    A1

as If I feel contact between the parent and child(ren) is harmful to the child(ren) in some way, I must report that to DSS; I understand DSS may not be able to intervene unless sufficient grounds for a court order exist.

6. I understand that by agreeing to provide a safety resource placement for the child(ren), I am agreeing to assure the basic needs of care and supervision are met and that the child(ren) receive any identified needed services to address medical or behavioral health concerns. This may include assisting with transportation to and from appointments and following recommendations from service providers. **I understand that if I am unable to or unwilling to meet the needs of the child(ren), the child(ren) may be removed from my home.**

7. I understand that the current plan is for the child(ren) to return to the care of the parent(s). I will work with the parent(s), DSS, and other service providers to promote this plan. This may include meetings with the parent(s) and regular DSS visits in my home. If I have concerns about child safety and/or the parent(s)' ability to care for the child(ren), I will notify the CPS social worker. **I agree to notify the social worker immediately if the child(ren) leave my home or of any changes related to the care of the child(ren).** I understand that DSS has the responsibility of assessing the safety and well-being of the child(ren).

_____
Safety Resource Placement Provider

_____
Safety Resource Placement Provider

_____
Social Worker

_____ 2/16/16
Social Worker Supervisor

Case Name: Cordell Hughes                    Case Number:

**2/23/16 P/C with Angie Haney**
SW called Angie to arrange a meeting with her and Heaven. SW left a message asking her to return the call

**2/24/16 F/F with Molly**
SW met with Molly and Tamyra at the office. Tamyra told SW that Molly wanted to go back to Hiawassee Dam and that Tamyra spoke with the Principal and Molly was going back to school the next day. SW then spoke with Molly and asked how she was doing. She said that she was better and didn't want to take all the medications that were prescribed at the Hospital bc she wasn't depressed now. SW stated that she needed to take the medications as prescribed and go to school. Molly agreed to this. Sw then asked if she wanted to move to Ga with her dad and Molly stated that she wanted to stay with Tamyra and go to her Dad's home on the weekend. SW asked why and she said she liked it at Tamyra's and didn't want to live in a trailer. SW asked if she was scared or worried about being with her dad and she said no. SW noted that Molly appeared nervous and kept moving around. SW asked Molly if she was nervous and she said yes. SW asked what was wrong and she stated she is always nervous. SW wanted to ask about the sexual abuse but decided to wait. SW thanked the family and they left

**2/24/16 P/C with Angie**
SW spoke with Angie and it was agreed that Angie and Heaven would meet at DSS with SW at 4pm on 2/25

**2/24/16 P/C with Timothy**
SW spoke with Timothy and asked why he didn't go with Tamyra the day before to get Molly from the Hospital. HE stated that he was waiting on a key for the car to take and didn't get the key in time. SW then asked if he was still planning to move to GA and he said he was going to move probably over the weekend. SW stated that he call her and meet with her before he moves the kids because SW would need to know and also need to send the case to GA. Timothy agreed to this.

**2/24/16 F/F with Caleb**
SW went to Ranger Elementary and met with Caleb. SW noted that he appeared healthy and was dressed appropriately. SW noted that he was eating lunch. SW spoke with Caleb and asked him how things were going at home with Dad and Grandma and he said good. SW asked if he had anything that SW could check on for him and he said no. He then smiled and showed SW what he was eating. SW thanked him and left. This was documented on 2/26/16

**2/25/16 F/F with Heaven and Angie**
SW met with Heaven and Angie at the Department. SW noted that Heaven appeared healthy and was dressed appropriately. SW asked Heaven how things were going at Angie's home and she said good. She told SW that she didn't want to go back with her dad because he wanted to marry her aunt and move to Georgia. SW asked if there were any concerns or if she was scared for any reason and she said no. SW then gave Angie the power of attorney papers and thanked them and they left. This was documented on 2/29/16

**3/1/16 Staffing with ACS Collateral**
SW spoke with Keith from Meridian at the ACS staffing. SW discussed the case and the concerns about the sexual abuse allegations. Keith told SW that he would inform Karen of this. SW then found out that Molly had made her 2/26 appointment and was scheduled on 3/4/16 with Bridgette.

**3/7/16 F/F with all three children**
SW went to Ranger and met with Caleb. SW noted that he appeared healthy and was dressed appropriately. SW asked him how things were going and he said good. HE then told SW of several fun things he and his father have been doing. He did not note any concerns. SW then went to HD school and met with Heaven. She stated things were great with Angie and Scott and she wanted to stay with them. Heaven told SW that she had also seen her brother and sister and it was good. SW then went to MT Youth and met with Molly. She told SW that she had been going to counseling and that she loved being with Tamyra. She did not note any concerns. This was documented on 3/11/16

**3/7/16 P/C with Timothy**
SW spoke with Timothy and stated both girls wanted to stay with their kinship placements. Timothy stated that he was fine with this. SW let Timothy know that he could revoke power of attorney at any time and get the girls and he said ok

DSS-5010a (Revised 06/08)
Family Support and Child Welfare Services

On-Going Case Contacts Page _____

---

EXHIBIT

A2

Confidential

CC-CCDSS BH 00015131

Case Name: ___Cordell Hughes___          Case Number: _____

but stated he probably wouldn't do that because the girls were doing good. SW stated that she would be closing the case as of 3/9/16. SW thanked Timothy and hung up. This was documented on 3/11/16

**3/9/16 P/C with Angie and Tamyra**
SW spoke with both Angie Haney and Tamyra White who stated that they wanted the girls to stay with them and understood that this was not custody but that they had power of attorney. Both were told that Timothy could revoke it at any time and both stated they understood.

**3/9/16 Staffing**
SW staffed this case and it was noted that both girls wanted to stay with the families they were with and since power of attorney was signed and Timothy was agreeable to this, SW could close the case. This was documented on 3/11/16

**3/14/16 Closing case**
SW worked on all appropriate documentation to close this case including the 5010, 5027, 5104 and closing letters to family and reporter.

DSS-5010a (Revised 09/08)
Family Support and Child Welfare Services

On-Going Case Contacts Page _____

Confidential

CC-CCDSS BH 00015133

NORTH CAROLINA

CHEROKEE COUNTY                    CUSTODY AND VISITATION AGREEMENT

THIS CUSTODY AND VISITATION AGREEMENT is made and entered into this the _____ day of September, 2017, by and between TIMOTHY CORDELL hereinafter referred to as "Mr. Cordell" or "the child's father") of Fannin County, Georgia and JACKIE AUSTIN, of Cherokee County, North Carolina, (hereinafter referred to as "Ms. Austin" or "the child's caretaker");

### W I T N E S S E T H :

Whereas, Timothy Cordell is the natural and biological father of Molly Cordell who was born on June 1, 2000; and

Whereas, Jackie Austin, is the caretaker Molly Cordell, hereinafter sometimes referred to as "the child"; and

Whereas, Timothy Cordell is currently incarcerated in the Fannin County, Georgia Detention Center and is unable to provide for care and needs of his daughter, Molly Cordell; and

Whereas, Jackie Austin, is able to provide a loving and stable home environment for said child and can provide for the support and maintenance of said child if the said child resides with her in her home; and

Whereas, the parties hereto desire to enter into this Agreement setting forth the terms and conditions for the care, custody and control of Molly Cordell which the parties hereto deem to be in the best interest of said child in order to adequately provide a loving and stable future for said child now and in the future.

NOW, THEREFORE, Timothy Cordell and Jackie Austin, do hereby stipulate and agree as follows:

1. The legal and physical care, custody and control of Molly Cordell, hereinafter sometimes referred to as "Molly", shall be placed with Jackie Austin until such time as Molly shall become 18 years of age or is otherwise emancipated.

2. Mr. Cordell, the child's father, shall have the right to have visitation with the child at reasonable times and for a reasonable length of time on each visitation period as the parties hereto may agree from time to time in the future subject to the following terms and conditions: (a) the child shall not be removed from Cherokee County, North Carolina by Mr. Cordell without the knowledge and consent of Ms. Austin; (b) no visitation will be exercised by Mr. Cordell with the child at any time which interferes with the child's normal social, school or church activities; (c) Mr. Cordell shall not have, use or possess any alcoholic beverage or controlled substance during any visitation period or for 96 hours prior to any time he may have visitation with the child; and (d) Mr. Cordell shall not allow any person who has, possesses or is using or has used

Confidential



CC-CCDSS BH 00014841

any alcoholic beverage or controlled substance within 96 hours to be in the presence of the child at any time or during any visitation period he is visiting with the child.

3. If Ms. Austin detects the odor of alcohol or any controlled substance on or about the person of Mr. Cordell or any person he has with him at any time when he comes to exercise the visitation with the child or if she are able to determine within a reasonable degree of certainty that Mr. Cordell or any other person with him is under the influence of any alcoholic beverage or any controlled substance, then, and in that event, Ms. Austin shall have the right to deny any visitation period between Mr. Cordell and Molly while he or any other person with her is in violation of the terms and conditions of this provision.

4. It is stipulated and agreed that Ms. Austin shall have the power and authority to seek, obtain and consent to and for any medical care or health care, emergency or otherwise, which may be necessary or advisable in providing for the best interests and care of Molly . It is further stipulated and agreed that Ms. Austin shall have full power and authority to enroll the child in school, and Ms. Austin shall have the power and authority to consent to any and all activities and programs which are necessary or beneficial to provide for the complete and well rounded education of the child.

5. It is stipulated and agreed that Ms. Austin may enroll and carry the child on her health care insurance or any other insurance for which the child may qualify as a member of Ms. Austin's home and household. It is further stipulated and agreed that for purposes of filing State and/or Federal income tax returns that Ms. Austin may claim the child as a dependent and as an exemption and, Ms. Austin shall be entitled to any claim and take advantage of any other tax benefit, including earned income tax credit, which is available to her because the child is a member of Ms. Austin's home and household.

6. It is hereto stipulated and agreed that the home state of the child as defined by the Uniform Child Custody Jurisdiction Act is North Carolina and any and all legal proceedings involving the custody of or visitation with the child shall and must be filed, litigated and decided in the Courts of the State of North Carolina pursuant to applicable North Carolina law and North carolina judicial decisions.

7. It is hereto stipulated and agreed that the site of this Agreement is North Carolina and said Agreement shall be interpreted in accordance with and governed by the laws and judicial decisions of the State of North Carolina.

IN WITNESS WHEREOF, the parties hereto have set their hands and seals, the day and year first above written on duplicate originals, one of which has been retained by each of the parties to this Agreement.

_Timmy Cordell_        9 - 22 - 2017 (SEAL)
Timothy Cordell, the child's father

_Caroline Austin_        (SEAL)

Confidential

CC-CCDSS BH 00014843

Jackie Austin, the child's caretaker

STATE OF GEORGIA

COUNTY OF FANNIN

I, Faith Hensley , a Notary Public of said State and County, do hereby certify that Timothy Cordell personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

WITNESS my hand and Notarial Seal, this 22nd day of September, 2017.

Faith A. Hensley
Notary Public

My Commission Expires:

Sept. 30, 2019

STATE OF NORTH CAROLINA

COUNTY OF CHEROKEE

I, Susan Prunier , a Notary Public of said State and County, do hereby certify that Jackie Austin, personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

WITNESS my hand and Notarial Seal, this 26th day of September, 2017.

Susan M. Prunier
Notary Public

My Commission Expires:

DEC. 10, 2017

Confidential

STATE OF NORTH CAROLINA        IN THE GENERAL COURT OF JUSTICE

CHEROKEE COUNTY             DISTRICT COURT DIVISION

                               18 CVD 0046

MICHAEL MATHIEU
     Plaintiff,

                           )
                           )
                           )     DECLARATORY JUDGMENT

Vs.                        )
                           )

SHALEES GREENLEE         )
     Defendant,              )
                           )

THIS MATTER coming on to be heard and being heard before the undersigned judge of the district court at the session of civil district court in Cherokee County on February 28, 2018 on Defendant Greenlee's counterclaim for declaratory judgment, the Court heard from the parties and their attorneys,

IT APPEARING TO THE COURT that both parties are present; the Plaintiff is represented by Zeyland McKinney and the Defendant is represented by David A. Wijewickrama, Ron Moore, D. Brandon Christian, and Melissa Jackson, and;

IT FURTHER APPEARING TO THE COURT that this action for child custody was filed by the Plaintiff in this Court seeking, *inter alia*, custody of the minor child Alana Roberts, born July 5, 2016. Plaintiff further sought and received an emergency *ex parte* order granting him temporary custody of the minor child pending further order of this Court, based in material part, on maintaining the status quo which Plaintiff contends was established by a Custody and Visitation Agreement. The Defendant filed a special appearance, answer, counterclaim, and several procedural motions, including a plea for a declaratory judgment, and;

- 1 -

EXHIBIT

*C*

7. SW Hughes told Greenlee that by signing the CVA Greenlee (1) would avoid court involvement, and (2) could avoid further drug testing.

8. SW Hughes also told Greenlee that, under the CVA, Greenlee would have visitation as agreed upon by the parties.

9. Greenlee understood and believed that to mean that her visitation with her child would be at least what she had been getting and probably more.

10. Beyond these assertions, SW Hughes did not explain or attempt to explain any of the terms and conditions of the CVA to Greenlee.

11. SW Hughes told Greenlee that once she signed the CVA:

    a. The case would be closed and there would be no follow up by the Department;

    b. The CVA was a legally binding document and was valid until the child turned 18 years of age; and

    c. That she would have to get an attorney to change and or modify the CVA.

12. Greenlee did not have independent counsel, was not offered independent counsel, and due to the fact that the SW Hughes came to her home with a notary on the date the CVA was signed, Greenlee did not have the opportunity to seek independent legal counsel.

13. Greenlee did not understand the terms and or conditions of the CVA.

14. There has never been a judicial determination as to custody of this minor child.

15. After the parties executed the CVA on November 13, 2016, custody of Alana Roberts was assumed by the Plaintiff.

16. The Defendant was unable to see her daughter for approximately one year based on the CVA.

17. Greenlee attempted on a number of occasions to visit with her minor child.

- 3 -

30. Greenlee submitted herself to drug testing pursuant to her case plan.

31. SW Hughes as well as Director Cindy Palmer indicated that the Defendant requested the CVA.

32. The Defendant nor the Plaintiff ever indicated by their testimony, that either party requested to sign a CVA.

33. The execution of a case plan contradicts the use or facilitation of a CVA.

34. The CVA was drafted and created by employees of CCDSS in conjunction with, at the direction of, and with and the approval of the Cherokee County Department of Social Services Attorney Scott Lindsay.

35. CCDSS has used CVAs to routinely remove children from their biological parents without due process of law or Court oversight.

36. The use of CVAs by CCDSS has been a regular course of dealing and pattern of practice over the course of many years.

37. The CVA or some variation thereof has been used by CCDSS for a number of years.

38. No CVA has ever been reviewed, signed, or entered and filed as an Order of the North Carolina District Court.

39. CCDSS Director Cindy Palmer, insisted that she did not know of the practice of using CVA until December of 2017 when she was informed of a prior incident with another CVA.

40. At all times relevant as set forth herien, Director Cindy Palmer, Social Worker Hughes and Attorney Scott Lindsay were acting within there Official scope of duty as employees and agents of Cherokee County Department of Social Services.

41. At the time the CVA was executed, Defendant was informed by CCDSS agents and employees that it carried the force of law, and the she was legally bound to adhere to its terms.

- 5 -

3. The CVA (Exhibit A to Plaintiff's Complaint) purports to create legal rights as between the parties regarding the custody of the minor child Alana Roberts, born July 5, 2016, and was relied upon by the Plaintiff as part of the basis for his *ex parte* custody order, which remains in effect.

4. Therefore, there exists between the parties a genuine controversy over the legal rights created by the CVA, and the parties are entitled to a declaratory judgment setting forth what rights, if any are created by the CVA.

5. For the reasons set forth more specifically below, the CVA creates no rights, is illegal, and is *void ab initio*.

6. The Fourteenth Amendment to the Constitution of the United States provides that no person shall be "deprive[d] . . . of life, liberty, or property, without due process of law . . . ." Article I, Section 19 of the North Carolina Constitution states that "[n]o person shall be . . . or in any manner deprived of his life, liberty, or property, but by the law of the land."

7. In *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000), the United States Supreme Court held that "[i]n light of . . . extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children."

8. To ensure that all parents enjoy the protections of due process in any case where DSS seeks to remove a child from his or her parent, the North Carolina General Assembly has enacted the Juvenile Code in Chapter 7B of the North Carolina General Statutes to govern all proceedings in which a juvenile is alleged to be abused, neglected, or dependent.

9. It is beyond dispute that one of the fundamental rights enjoyed by all parents under the United States Constitution is the right to raise their children without government

- 7 -

management of their child"); and *Troxel*, at 66 ("In light of . . . extensive precedent, it cannot now be doubted that the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.")

10. The same protection is extended to the people of North Carolina by Article 1, Section 19 of the North Carolina Constitution.

11. The term "law of the land" as used in Article I, Section 19 of the North Carolina Constitution means the general law, the law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial. It means the regular course of the administration of justice through the courts of competent jurisdiction, after the manner of such courts. Procedure must be consistent with the fundamental principles of liberty and justice. *State v. Chesson*, 228 N.C. 259, 45 S.E.2d 563 (1947), *writ dismissed*, 334 U.S. 806, 68 S. Ct. 1185, 92 L. Ed. 1739 (1948). *See also, Eason v. Spence*, 232 N.C. 579, 61 S.E.2d 717 (1950). Among other things, "the law of the land" or "due process of law" imports both notice and the opportunity to be heard before a competent tribunal. *Parker v. Stewart*, 29 N.C. App. 747, 225 S.E.2d 632 (1976); *Utica Mut. Ins. Co. v. Johnson*, 41 N.C. App. 299, 254 S.E.2d 643 (1979).

12. Moreover, the North Carolina "Supreme Court has held that the term 'law of the land,' as used in Article I, Section 19 of the North Carolina Constitution, is synonymous with 'due process of law' as that term is applied under the Fourteenth Amendment to the United States Constitution. *In re Petition of Smith*, 82 N.C. App. 107, 109, 345 S.E.2d 423, 425 (1986) (quoting *In re Moore*, 289 N.C. 95, 221 S.E. 2d 307 (1976)). *Also see State v. Smith*, 90 N.C. App. 161, 368 S.E.2d 33 (1988), *aff'd*, 323 N.C. 703, 374 S.E.2d 866, *cert.*

- 9 -

the United State, Article I Section 19 of the Constitution of the State of North Carolina, and Chapter 7B of the North Carolina General Statutes

19. The complete, utter, willful, and malicious decision of CCDSS, Director Palmer, Attorney Lindsay and David Hughes to willfully and deliberately remove the minor child in this case from Defendant Greenlee's custody by means of this unlawful CVA is the direct and proximate cause of Defendant Greenlee being separated from her child.

20. Any injury or harm accruing to any parent or child affected by a CVA is the direct and proximate result of CCDSS's, Director Palmer, Attorney Lindsay and the other policy makers for CCDSS deciding to violate the rights of parents and children.

21. The CVA before the court in this case was obtained outside of the judicial process, and therefore was obtained in violation of Defendant Greenlee's rights under the Fourteenth Amendment to the Constitution of the United State, Article I Section 19 of the Constitution of the State of North Carolina, and Chapter 7B of the North Carolina General Statutes.

22. Pursuant to the North Carolina General Statutes, the District Court Division of the General Court of Justice has original and exclusive jurisdiction over all matters pertaining to DSS cases brought under Chapter 7B and custody action brought under Chapters 50 and 50A.

23. There has never been a judicial determination as to custody of this minor child, therefore, the CVA cannot have legal authority.

24. North Carolina recognizes two types of fraud, actual and constructive.

25. Actual fraud occurs when a person obtains something from another person by means of a misrepresentation. "In pleading actual fraud, the particularity requirement is met by alleging time, place and content of the fraudulent representation, identity of the person

- 11 -

e. SW Hughes clearly made material misrepresentations about the CVA and the CVA process to induce Defendant to sign.

f. Additionally, SW Hughes told Greenlee that by signing the CVA Greenlee (1) would avoid court involvement, and (2) could avoid further drug testing.

g. SW Hughes also told Greenlee that, under the CVA, Greenlee would have visitation and contact with the minor child.

h. Beyond these assertions, SW Hughes did not explain or attempt to explain any of the terms and conditions of the CVA to Greenlee.

i. SW Hughes told Greenlee that once she signed the CVA the case would be closed and there would be no follow up by the Department; the CVA was a legally binding document and was valid until the child turned 18 years of age; and that she would have to get an attorney to change and or modify the CVA.

j. Despite the fact that SW Hughes told Greenlee that she was signing a binding legal document, which would have the force and power of a court order and bind her rights insofar as they concerned her custody of her minor child, Greenlee did not have independent counsel, was not offered independent counsel, and was not given the opportunity to speak with independent legal counsel.

k. Moreover, Greenlee did not understand the terms and or conditions of the CVA, especially the fact that the CVA did not create any legal rights as to the minor child's custody.

l. Yet, after the parties executed the CVA on November 13, 2016, custody of Alana Roberts was assumed by the Plaintiff.

- 13 -

Department of Social Services, their agents or employees and Attorney Scott Lindsay are

and shall be at all times *void ab initio*.


Entered this, the, 28th day of February, 2018.

Signed this, the, 14th day of March, 2018.


Honorable Tessa Sellers,
District Court Judge Presiding

- 15 -



# DEPARTMENT OF HEALTH AND HUMAN SERVICES
## DIVISION OF SOCIAL SERVICES
### CHILD WELFARE SERVICES

ROY COOPER
GOVERNOR

MANDY COHEN, MD, MPH
SECRETARY

WAYNE E. BLACK
DIRECTOR

December 20, 2017

DEAR COUNTY DIRECTORS OF SOCIAL SERVICES

SUBJECT:  **URGENT**: POLICY AND PRACTICE ALERT: PRIVATE CUSTODY AGREEMENTS

It has come to our attention that child welfare staff in some county Departments of Social Services may be facilitating the completion of private custody agreements between the parent(s) of children involved in Child Protective Services and other family members or other individuals, without the oversight of the Court. Counties thought to be facilitating such agreements have been contacted directly.   This letter is a reminder that facilitating such private custody agreements without the oversight of the Court falls outside of both law and policy.

NCGS 108A-14(a)(11) provides that a director of social services has the duty and responsibility to "assess reports of child abuse and neglect and to take appropriate action to protect such children pursuant to the Child Abuse Reporting Law, Article 3 of Chapter 7B of the General Statutes." Article 3 of Chapter 7B of the General Statutes and DHHS policy set forth the duties and responsibilities of county Departments of Social Services related to the placement and custody of children involved in Child Protective Services. The use of agency resources to facilitate private custody agreements without the oversight of the Court does not fall within the provision of Child Protective Services, and is therefore beyond the scope of a County Department of Social Services' duties and responsibilities.

As a reminder, the goal of Child Protective Services is to support and improve parental/caregiver abilities to assure a safe and nurturing home for each child. In-Home Services engages families in the planning process while producing better outcomes of safety, permanence, and well-being for children, and encourages families to develop a support network that can assist them in planning for coping with future challenges.

If you have questions, please consult with your agency attorney or contact your Children's Program Representative.

Sincerely,

Lisa T. Cauley
Deputy Director

CWS-50-2017

**EXHIBIT**

tabbies

D